IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CARLOTA QUEVEDO, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No: 1:21-CV-141 |
| | § | |
| LANTOWER LUXURY LIVING, LLC | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff, Carlota Quevedo, and files this Original Complaint complaining of Defendant Lantower Luxury Living, LLC ("Lantower") and for cause of action would show the Court the following:

### I. INTRODUCTION

1. This action seeks damages, attorneys' fees, taxable costs of the court, pre-judgment and post-judgment interest as a result of civilly wrongful conduct in violation of the laws of the United States.

1.2 Plaintiff, by counsel, brings this action for damages and other legal and equitable relief for Defendant Lantower's violations of Title VII of the Civil Rights Act of 1964.

### II. THE PARTIES

2.1 Plaintiff is an individual who can be contacted through counsel.

2.2 Defendant Lantower Luxury Living, LLC is an entity that may be served through its registered agent, C T Corporation System, 1999 Bryan St., Ste. 900 Dallas, Texas 75201.

## III. JURISDICTION, VENUE AND CONDITION PRECEDENT

3.1     The amount in controversy exceeds the jurisdictional minimum amount in controversy for this Court. The Plaintiff was employed with Defendant.  Jurisdiction is invoked pursuant to 42 U.S.C. §2000e-2 and 42 U.S.C. §2000e-3.

3.2     This action lies in the United States District Court for the Western District of Texas pursuant to 28 U.S.C. § 1391(b) and (c) because it is the district where Defendant is located and where a substantial part of the facts that led to this claim occurred and thus is subject to jurisdiction and venue within this judicial district.

3.3     All conditions precedent have been performed or have occurred.

## IV. FACTS

4.1     Plaintiff began working at Lantower Tech Ridge (formally NXNE) in November, 2017 as a Maintenance Technician.  Her supervisor was Danilo Stanley.

4.2     Approximately 3 weeks after working with Danilo he asked Plaintiff if she was a woman or a man.  Plaintiff told him that it was an inappropriate question.  A few weeks later Danilo told Plaintiff that he does not like working with lesbians and that he had a man ready to replace her because working with lesbians is problematic.  He made comments about his disdain for women and lesbians numerous times during Plaintiff's employment.  He constantly mentioned he wanted a man named Freddy to come work with him.  Freddy visited the property and Danilo told Freddy, while Plaintiff was present, "just wait you will be working here soon."

4.3     Danilo would get angry when Plaintiff asked him to help her lift heavy objects such as couches, mattresses, dressers, armoires, etc. for trash pick-up.  He would tell Plaintiff that it is her job and Plaintiff need to figure out how to get it done, despite the fact that Plaintiff had been

told the trash clean up is to be done as a team.

4.4     Danilo's negative treatment of Plaintiff continued.  When Plaintiff asked him to have a discussion with her and the property manager, Lauren, he refused, and he also told Plaintiff that he did not care if Plaintiff went to Lauren herself because no one would understand her anyway. Plaintiff is a native Spanish speaker.  Plaintiff speaks some English, but Plaintiff is not fluent and is not comfortable conversing in English.  Plaintiff did go to Lauren herself but when Plaintiff requested a translator so that Plaintiff could describe her complaints, Lauren refused to provide a translator.

4.5     On Monday December 10, 2018 an issue arose when Danilo assigned Plaintiff to do a make ready on apartment 1138.  Plaintiff was instructed that the items inside were junk and needed to be thrown out.  While Plaintiff was working on 1138, but before it was complete, Danilo assigned her to do a paint touch up on a different apartment.  Plaintiff left a ladder, drill, a can of paint, and a bag with her tools in 1138 and locked the door to the unit.  Unbeknownst to Plaintiff, 1138 was, in fact, an occupied unit that the resident just happened not to be in when Plaintiff was doing her work.  Plaintiff learned this on December 12, 2018 when Plaintiff went back to 1138 and was surprised to find the door locked from the inside.  The resident, who was understandably upset, opened the door, yelled at Plaintiff and called her a thief because items were missing.  Plaintiff did not take any of the resident's items.  Plaintiff called Danilo to the apartment where he tried to blame the incident on her to the resident.  Following the interaction Plaintiff went to Lauren and attempted, in her limited English, to explain what had happened. Plaintiff asked for a translator so that Plaintiff could explain what had happened and, again, her request was ignored.  Plaintiff was told a mistake was made by the office in assigning an occupied apartment to her.

4.6     In the afternoon, before Plaintiff left for the day, Lauren called her to a meeting at which Lauren and Danilo were present.  They showed Plaintiff, but did not allow her to attempt to read, a document in English.  Danilo, who is bilingual, translated it to Plaintiff and told her that it was simply an outline of things to make Lantower's processes run more smoothly and help avoid another incident like happened with 1138.  These included: that everyone was going to work together; that when Plaintiff needed to move her things Plaintiff would be able to use the golf cart from 7:30am-8:30am and that at other times she needed it she was to coordinate with the office; that Plaintiff needed to return the on-call messages within 30 minutes of receiving the call; that Plaintiff needed to leave any apartment Plaintiff she was working on completed.  Plaintiff was uncomfortable with Danilo translating because his treatment of Plaintiff and other actions made her unable to trust him.  But when Plaintiff asked for a different translator Lauren refused and assured her that he was reading what was on the document.  With little other choice Plaintiff accepted what Danilo was telling her and Plaintiff signed the document.

4.7     On December 13, 2018 Plaintiff asked Danilo for help removing a dish antenna from the balcony of an apartment.  He started to argue with Plaintiff and said Plaintiff had just arrived and was "already bitching" and that he was very stressed.  At that point Plaintiff said she wanted to go and speak with the manager, but he said he would call the manager.  He did and Plaintiff was told to go to the office for a meeting with Terry and Lauren.  During this meeting Plaintiff was finally allowed to see the document Plaintiff signed and realized that what was on the document was not what Danilo read/translated to her and was, in fact, a final written warning filled with falsehoods about her performance.  Once again Plaintiff asked Lauren for a translator and was told no one was available.  Plaintiff offered to have her partner, who is bilingual, translate for her, but that request was refused.  Plaintiff went back to work, but was called to the office later in

the day at which time there was a translator who told her, without explanation, that Plaintiff was being terminated. Prior to the December 12 document that Danilo blatantly lied to Plaintiff about Plaintiff had never had any warnings. After termination Danilo told other employees Plaintiff was terminated because Plaintiff stole a cell phone, which is not true and was not a reason given for her termination.

## V. CAUSES OF ACTION

5.1 The allegations contained in Paragraphs 4.1 through 4.7 inclusive are hereby incorporated by reference for all causes of action.

### Gender, Race and National Origin Discrimination Under Title VII

5.2 Plaintiff was discriminated against, harassed and subjected to a hostile work environment because of her gender and/or race and/or national origin, or on the basis of her gender and/or race and/or national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e-2(a)(1). Defendant is an employer within the meaning of Title VII. Title VII provides that it shall be unlawful for an employer to discharge any individual, or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's gender or race or national origin, or to limit, segregate, or classify employees for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect status as an employee because of such individual's gender or race or national origin.

5.3 Defendant intentionally discriminated against Plaintiff because of her gender and/or race and/or national origin, or on the basis of gender and/or race and/or national origin in violation of

Title VII by unlawfully discharging her because of her gender and/or race and/or national origin. Plaintiff is a member of a protected class and was selected for unfavorable treatment by Defendant, including termination, because of her gender and/or race and/or national origin. Plaintiff's gender and/or race and/or national origin was a determining or motivating factor in Defendant's decision to terminate Plaintiff's employment and otherwise discriminate against her. Unlawful discrimination moved Defendant toward its decision or was a factor that played a part in Defendant's employment decisions as to Plaintiff. The unlawful practices committed by Defendant were and are a direct cause of Plaintiff's damages, as more fully set forth below.

5.4     42 U.S.C. §1981 prohibits race discrimination in the making and enforcing of contracts, including the making, performance, modification, and termination of contracts, and the enjoyment of benefits, privileges and conditions of the contractual relationship. Plaintiff is a member of a protected class and was selected for unfavorable treatment by Defendant, including her termination, because of her race. Plaintiff's race was a determining or motivating factor in Defendant's decision to terminate Plaintiff's employment and otherwise discriminate against her and harass her. Unlawful discrimination moved Defendant toward its decision or was a factor that played a part in Defendant's employment decisions as to Plaintiff.

5.7     Defendant intentionally discriminated against and harassed Plaintiff because of her race or on the basis of race in violation of 42 U.S.C. §1981 by unlawfully discharging her because of her race. Plaintiff is a member of a protected class and was selected for unfavorable treatment by Defendant, including termination, because of her race. Plaintiff's race was a determining or motivating factor in Defendant's decision to terminate Plaintiff's employment and otherwise discriminate against her. Unlawful discrimination moved Defendant toward its decision or was a factor that played a part in Defendant's employment decisions as to Plaintiff. The unlawful

practices committed by Defendant were a direct cause of Plaintiff's damages, as more fully set forth below.

### Retaliation under Title VII and 1981

5.8     Defendant retaliated against Plaintiff for making a discrimination complaint, assisting or participating in a discrimination investigation, and otherwise opposing discrimination by the employer. Plaintiff made a discrimination complaint, assisted and participating in a discrimination investigation, and opposed a discriminatory practice by Defendant, suffered adverse employment actions as a result in that Defendant terminated Plaintiff's employment and otherwise discriminated against her, and there is a causal connection between the making of the discrimination complaint, and the assistance and participation in a discrimination investigation, and opposition to the discriminatory practice and the adverse employment actions. The unlawful practices committed by Defendant were and are a direct cause of Plaintiff's damages, as more fully set forth below.  Defendant's retaliatory actions violated Title VII, as well as 42 U.S.C. Section 1981.  Alternatively, they were a motivating factor of Defendant with respect to its employment decisions regarding Plaintiff.

### VI. DAMAGES

6.1     As a result of Defendants' unlawful conduct, Plaintiff has suffered economic and actual damages, including past and future lost income, back wages or back pay, interest on back pay and front pay, future wages or front pay, employment benefits in the past and future, lost earnings in the past and future, and all lost benefits under the contract or employment relationship.

### VII. COMPENSATORY DAMAGES

7.1     Defendant has intentionally engaged in unlawful employment practices. Plaintiff

additionally brings suit for compensatory damages from Defendants, including emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, injury to credit standing, job search expenses, lost earning capacity in the past and future, and other pecuniary and non-pecuniary losses.

## VIII. ATTORNEYS' FEES AND EXPERT FEES

8.1    A prevailing party may recover reasonable attorneys' fees, expert fees, and costs. SEE Title VII, 42 U.S.C. §2000e-5(k), et. seq.  Plaintiff brings suit for these fees from Defendant. Plaintiff seeks all reasonable expert fees and attorneys' fees in this case, including preparation and trial of this lawsuit, post-trial, pre- appeal work, any appeal to the Fifth Circuit Court of Appeals, or an appeal to the United States Supreme Court, and post-judgment discovery and collection in the event execution on the judgment is necessary.

## IX. PUNITIVE DAMAGES

9.1    Defendants have acted with malice or reckless indifference to Plaintiff's rights. Defendants, by engaging in the aforementioned acts engaged in willful, malicious, intentional, and oppressive conduct and acted with willful and conscious disregard, or alternatively reckless disregard or indifference of the rights, welfare, and safety of Plaintiff, therefore justifying the award of punitive and exemplary damages in an amount to be determined at trial. Therefore, Plaintiffs additionally brings suit for punitive damages and exemplary damages against Defendant for Plaintiff's termination, retaliation and discrimination.

## X. JURY DEMAND

10.1    Plaintiff demands a trial by jury on all issues.

# PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and, upon final trial, Plaintiff have Judgment against Defendant as requested above, and as follows:

1. Judgment against Defendant for all damages alleged in this complaint;
2. Interest before and after judgment at the highest rate provided by law, until paid;
3. Costs of suit;
4. Reasonable and necessary attorneys' fees and expert witness fees;
5. Injunctive and declaratory relief; and
6. Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

THE MELTON LAW FIRM, P.L.L.C.
925 S. Capital of Texas Highway, Suite B225
Austin, Texas 78746
(512) 330-0017 Telephone
(512) 330-0067 Facsimile

/s/ John F. Melton
John F. Melton
jmelton@jfmeltonlaw.com
State Bar No. 24013155
Michael W. Balcezak
State Bar No.: 24012236
Michael@jfmeltonlaw.com
ATTORNEYS FOR PLAINTIFF