# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| CARLOTA QUEVEDO,<br>*Plaintiff*<br><br>v.<br><br>LANTOWER LUXURY LIVING, LLC,<br>*Defendant* | §<br>§<br>§<br>§   Case No. 1:21-CV-00141-RP<br>§<br>§<br>§ |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE ROBERT PITMAN**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant's Motion for Summary Judgment, filed January 31, 2023 (Dkt. 26); Plaintiff's Response, filed February 21, 2023 (Dkt. 28); and Defendant's Reply, filed March 7, 2023 (Dkt. 30). By Text Order entered February 27, 2023, the District Court referred the motion and related filings to this Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I.   Background

Plaintiff Carlota Quevedo sues her former employer, Defendant Lantower Luxury Living, LLC, for employment discrimination under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Quevedo alleges that Lantower discriminated against her because of her race (White), national origin (Guatemalan), sex (female), and sexual orientation (lesbian), and retaliated against her for complaining about that discrimination. Plaintiff's Original Complaint, Dkt. 1.

Lantower hired Quevedo to work as Maintenance Technician at the Lantower Tech Ridge Apartments in Austin, Texas ("Property") in November 2017. *Id.* ¶ 4.1. Her duties included

1

ensuring vacant apartment units were made ready for new residents. Winters Aff. (Dkt. 26-2) ¶ 5. In August 2018, Lantower hired Danilo Stanley, a white male of Panamanian national origin, as the Maintenance Supervisor of the Property. Dkt. 30-1 at 32. Quevedo alleges that "[a]lmost immediately" after Stanley began working at the Property, she "began experiencing harassment and a hostile work environment because of his actions." *Id.* Quevedo alleges that Stanley made repeated offensive and discriminatory comments to her regarding her gender, sexual orientation, and national origin. She alleges that Stanley (1) asked her "if she was a woman or a man"; (2) told her that he "does not like working with lesbians and that he had a man ready to replace her because working with lesbians is problematic"; (3) made repeated comments that he disdained women and lesbians; (4) "would get angry when Plaintiff asked him to help her lift heavy objects"; and (5) "told Plaintiff that he did not care if Plaintiff went to Lauren [Brizendine, the Property Manager] herself because no one would understand her anyway." Dkt. 1 ¶¶ 4.2-4.4. Quevedo is a native Spanish speaker and alleges that she "speaks some English, but [ ] is not fluent and is not comfortable conversing in English." Dkt. 1 ¶ 4.4. Quevedo alleges that she complained to Brizendine about Stanley, "but when Plaintiff requested a translator so that Plaintiff could describe her complaints, Lauren refused to provide a translator." *Id.* ¶ 4.4.

On December 10, 2018, Stanley assigned Quevedo "to do a make ready on apartment 1138" and told her that "the items inside were junk and needed to be thrown out." *Id.* ¶ 4.5. Quevedo alleges that while she was working on Unit 1138 but before the work was complete, Stanley assigned her to do a paint touchup on a different apartment. Quevedo alleges that she left her equipment in Unit 1138, locked the door, and began working on the other apartment. *Id.* "Unbeknownst to Plaintiff, 1138 was, in fact, an occupied unit that the resident just happened not to be in when Plaintiff was doing her work." *Id.* When she returned to Unit 1138 on December 12,

2018, the resident "was understandably upset, opened the door, yelled at Plaintiff and called her a thief because items were missing." *Id.*

Quevedo called Stanley. She alleges that when Stanley arrived at Unit 1138, "he tried to blame the incident on her to the resident." *Id.* Quevedo went to meet with Brizendine "and attempted, in her limited English, to explain what had happened." *Id.* Quevedo alleges that she asked Brizendine for a translator so that she could explain what had happened, but her request was ignored. Brizendine told Quevedo that "a mistake was made by the office in assigning an occupied apartment to her." *Id.*

Later the same day, Quevedo met with Stanley and Brizendine, who "showed Plaintiff, but did not allow her to read, a document in English." *Id.* ¶ 4.6. Stanley translated the document to Plaintiff "and told her that it was simply an outline of things to make Lantower's processes run more smoothly and help avoid another incident like happened with 1138." *Id.* Quevedo alleges that Brizendine denied her request for a different translator. *Id.* "With little other choice Plaintiff accepted what [Stanley] was telling her and Plaintiff signed the document." *Id.*

On December 13, 2018, Quevedo asked Stanley to help her move an item out of an apartment. In response, Quevedo alleges that Stanley "started to argue with Plaintiff and said that Plaintiff had just arrived and was 'already bitching.'" *Id.* ¶ 4.7. Quevedo alleges that she told Stanley she wanted to discuss the matter with Brizendine. Quevedo and Stanley then met with Brizendine and Terri Winters, Lantower's Regional Property Manager. *Id.* During this meeting, Quevedo discovered that the document she had signed three days earlier "was not what [Stanley] read/ translated to her and was, in fact, a final written warning filled with falsehoods about her performance." *Id.* The Performance Improvement Plan ("PIP") accused Quevedo of displaying unprofessional behavior, substandard work ethic, lack of time management, and insubordination

3

to her supervisors. Dkt. 26-1 at 5-6. Later that day, Brizendine informed Quevedo through a translator, "without explanation, that Plaintiff was being terminated." Dkt. 1 ¶ 4.7.

Lantower denies Quevedo's allegations and asserts that it terminated her employment because of poor work performance and unprofessional behavior. Lantower contends that Quevedo (1) failed to ensure that "the units assigned to her were properly 'made-up' prior to a resident's move-in," Dkt. 26-2 ¶ 5; (2) repeatedly yelled at and bullied coworkers; and (3) was insubordinate to her supervisor and managers, including "yelling at everyone" during her December 13, 2018 meeting with Winters and Brizendine, Dkt. 26-2. After the meeting, Winters and Brizendine called Katie French, Defendant's Asset Manager, and they all agreed to terminate Quevedo. *Id.*

Quevedo sued Lantower, alleging (1) race, national origin and gender discrimination, in violation of Title VII; (2) that she experienced a hostile work environment because of her gender, race and national origin, in violation of Title VII; (3) discrimination based on race, in violation of 42 U.S.C. § 1981; and (4) retaliation for complaining of discrimination, in violation of Title VII and 42 U.S.C. § 1981. Dkt. 1 ¶¶ 5.2-5.8. Quevedo seeks compensatory damages, punitive damages, attorneys' fees, and expert fees. Lantower moves for summary judgment under Federal Rule of Civil Procedure 56(a), arguing that "Plaintiff has provided no evidence creating triable issue of fact." Dkt. 26 at 1.

## II.     Legal Standards

"Summary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (quoting FED. R. CIV. P. 56(a)). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "dispute regarding a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Id.*

The party seeking summary judgment "has the initial burden of demonstrating the absence of a material fact issue." *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 994 F.3d 704, 708 (5th Cir. 2021). The parties "must support" their assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c). If the movant sustains its burden, the burden moves to the nonmoving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. If the nonmoving party fails to make this showing, "the trial judge shall then grant summary judgment." *Id.* The central inquiry under Rule 56 is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251.

In evaluating a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* But a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).

### III.     Defendant's Objections to Quevedo's Deposition Testimony

Quevedo's deposition took place on January 31, 2023. During her deposition, Quevedo repeated her allegations that Stanley made offensive and derogatory comments to her about her sexual orientation. After this testimony, Lantower's attorney asked Quevedo: "Did anyone else at Lantower say anything to you about your sexual orientation or the fact that you are a lesbian?" Plaintiff's Tr.[1] (Dkt. 28-1) at 69:25-70:2. Quevedo responded in the affirmative and testified that she overheard Brizendine tell Stanley once that "lesbians were problematic people." *Id.* at 70:4-12. When Lantower's attorney asked Quevedo why she had not made this allegation earlier in the case, Quevedo testified: "Sometimes I remember things that I didn't before." Dkt. 30-1 at 71:1-3.

Lantower argues that Quevedo's allegations about Brizendine's alleged comment should be excluded because she did not assert this allegation previously in her EEOC Charge or pleadings. Dkt. 30 at 4. In support, Lantower relies on *Campanello v. Anthony & Sylvan Pools Corp.*, No. 3:03-CV-1884-G, 2004 WL 2049313, at *5 (N.D. Tex. Sept. 14, 2004), in which the district court stated that "a plaintiff may not contradict earlier testimony in hopes of establishing a genuine issue of material fact."

In *Campanello*, the plaintiff alleged that her employer discharged her because of her sex. The employer moved for summary judgment and produced evidence that it terminated Quevedo because she abandoned her job by failing to report to work for three days. *Id.* at *4. In her response to the defendant's motion for summary judgment, the plaintiff relied solely on her own affidavit as evidence that the legitimate reasons proffered by the defendant were pretexts for sexual discrimination. *Id.* The district court excluded the affidavit under the so-called "sham affidavit doctrine," reasoning that the plaintiff

---

[1] The parties each submit portions of Plaintiff's deposition transcript. Dkts. 28-1 and 30-1.

> may not manufacture a genuine issue of material fact by submitting an affidavit that impeaches prior testimony without explanation. If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting [her] own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.

*Id.* at *5 (quoting *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000)).

The sham affidavit doctrine does not apply because Quevedo does not attempt to use an affidavit to impeach her prior sworn deposition testimony. "An affidavit that supplements rather than contradicts prior deposition testimony falls outside the doctrine's ambit." *Seigler v. Wal-Mart Stores Texas, L.L.C.*, 30 F.4th 472, 477 (5th Cir. 2022) (explaining that the sham affidavit doctrine "does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony"). Quevedo's deposition testimony does not directly conflict with her previous allegations, but merely supplements them. Lantower's objections to Quevedo's testimony also go to Quevedo's credibility, which is beyond the scope of the Court's authority in reviewing a motion for summary judgment. *Reeves*, 530 U.S. at 150. The Court denies Lantower's request not to consider Quevedo's testimony as to Brizendine's alleged comments.

## IV.    Analysis

Lantower moves for summary judgment on all of Quevedo's claims.

**A. Hostile Work Environment**

Although Lantower argues in its Motion that it is entitled to summary judgment on "all claims brought against it by Plaintiff," it does not address Quevedo's hostile work environment claim. Lantower thus fails to sustain its initial burden under Rule 56(c) to show "the absence of a material fact issue" as to this claim. *In re Taxotere*, 994 F.3d at 708. Defendant's Motion for Summary should be denied as to Quevedo's hostile work environment claim.

## B. Race and National Origin Discrimination

Quevedo alleges that Lantower discriminated against her because of her race and national origin, but in her Response to Defendant's Motion for Summary Judgment, she defends only her gender discrimination and retaliation claims under Title VII. Quevedo thus abandons her race and national origin claims under Title VII and § 1981, which should be dismissed. *See Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (finding that plaintiff abandoned his malicious civil prosecution claim where his oppositions to motions to dismiss and for summary judgment contained arguments only about his malicious criminal prosecution claim, not his malicious civil prosecution claim); *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[Plaintiff's] failure to pursue this claim beyond her complaint constituted abandonment.").

## C. Gender Discrimination

Title VII makes it unlawful to "discharge any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can establish "a prima facie case of discrimination using either direct or circumstantial evidence." *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir. 2015). If the plaintiff presents direct evidence of discrimination, "the court does not wade into the *McDonnell Douglas* test, but instead the burden shifts to the employer to prove by a preponderance of the evidence that the same decision would have been made regardless of the discriminatory animus." *Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 217-18 (5th Cir. 2023) (cleaned up).

If the plaintiff presents only circumstantial evidence, then she must prove discrimination inferentially using the three-step burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* Under that framework, the plaintiff first must establish a prima facie case of discrimination, which requires her to show that (1) she belongs to a protected group,

(2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) a similarly situated employee outside of her protected group was treated more favorably. *Watkins v. Tregre*, 997 F.3d 275, 282 (5th Cir. 2021). If the plaintiff makes out a prima facie case of discrimination, the burden then shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its decision. *Id.* If the defendant does so, "the presumption of discrimination disappears," and the plaintiff "must then produce substantial evidence indicating that the proffered legitimate[,] nondiscriminatory reason is a pretext for discrimination." *Id.*

Lantower argues that Quevedo has not alleged a prima facie case of gender discrimination because she has not shown that she was replaced by an individual outside of her protected class or that she was qualified for the Maintenance Technician position. Lantower's argument, however, "is only relevant when circumstantial evidence is necessary to establish a sex-discrimination claim under the *McDonnell Douglas* framework." *Wallace*, 57 F.4th at 219. Quevedo argues that the court need not apply the *McDonnell Douglas* test because "there is direct evidence of gender discrimination." Dkt. 28 at 5. Therefore, the Court must determine whether Quevedo has established a prima facie case based on direct evidence of sex discrimination.

1. **Direct Evidence**

Direct evidence of discrimination "proves the fact without inference or presumption. This evidence includes any statement or written document showing a discriminatory motive on its face." *Wallace*, 57 F.4th at 220 (citations omitted); *see also Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) ("Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.").

Quevedo argues that the following comments and inquiries Stanley made to her are direct evidence of discrimination: "he didn't like to work with lesbian women," Plaintiff's Tr. (Dkt. 28-1)

at 55:19-20; "lesbian women are useless; that I was not good for anything," *id.* at 68:20-22; and questions about "how a person would choose to dress like that," *id.* at 68:22-24. Quevedo argues that Brizendine's comment to Stanley that "lesbians were problematic people" also is direct evidence of discrimination. *Id.* at 70:16-19.

"Where a plaintiff offers remarks as direct evidence, [courts] apply a four-part test to determine whether they are sufficient to overcome summary judgment." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 581 (5th Cir. 2020). To qualify as direct evidence of discrimination, workplace comments must be (1) related to the protected class of persons of which plaintiff is a member; (2) proximate in time to the terminations; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue. *Id.* Comments that do not meet these criteria are considered "stray remarks" and cannot defeat summary judgment standing alone. *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010).

Lantower argues that Stanley's comments do not meet the third factor because "the record contains no evidence that Mr. Stanley made or was otherwise involved in Lantower's ultimate decision to terminate Quevedo's employment, much less that Mr. Stanley even had the authority to make such a decision." Dkt. 30 at 3. Quevedo responds that Stanley had "authority to terminate plaintiff," but produces no evidence to support this allegation. Dkt. 28 at 7.

The record shows that Brizendine and Winters, after conferring with French, made the decision to terminate Quevedo. Dkt. 26-2 at 5 ("Terri and Lauren then called Katie French to discuss the situation and what next steps should be taken. Katie agreed that termination was needed."). Because Quevedo produces no evidence that Stanley was the ultimate decisionmaker regarding her termination, his statements are not direct evidence of discrimination. *See Clark*, 952 F.3d at 581 (affirming finding that vice president's statement was not direct evidence of discrimination

10

where "the evidence suggests that the speaker . . . was not the ultimate decisionmaker regarding termination"); *Sandstad*, 309 F.3d at 898 (affirming finding of no direct evidence of discriminatory motive where president's comment that company "skipped a generation" in choosing plaintiff's replacement was ambiguous and president was not responsible for termination).

Quevedo does not show that Brizendine's comment that "lesbians were problematic people" was "proximate in time to the termination" because Quevedo does not testify when the comment was made. *See Clark*, 952 F.3d at 581. Nor does she show that it was "related to the employment decision at issue." Brizendine's comment does not satisfy factors two and four and so is not direct evidence of discrimination.

### 2. Prima Facie Case Under *McDonnell Douglas*

Because Quevedo does not show direct evidence of discrimination, the Court must apply the *McDonnell Douglass* test to determine whether she has met her initial burden on her prima facie case. To establish her prima facie case of intentional discrimination under *McDonnell Douglas*, Quevedo must show that she (1) is a member of a protected class; (2) was qualified for her position; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside the protected class. *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020). Lantower does not dispute that Quevedo satisfies the first and third *McDonnell Douglas* factors, but argues that she fails to meet the second and fourth factors.

The Court finds the fourth factor dispositive. Lantower argues that Quevedo identifies no evidence that she was replaced by an employee outside of her protected class. Quevedo does not respond to this argument. Because she does not allege or show that she was replaced by someone outside of her protected class or that similarly situated male employees were treated more

11

favorably, Quevedo does not establish a prima facie case of intentional gender discrimination. *See Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017) (holding that plaintiff's Title VII discrimination claim failed as a matter of law where he "failed to produce any evidence that he was treated less favorably than others 'similarly situated' outside of his protected class"); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405-06 (5th Cir. 2005) (holding that plaintiff did not establish prima facie discrimination claim where he failed to show he was replaced by someone outside of his protected class); *Noel v. Shell Oil Co.*, 261 F. Supp. 3d 752, 769 (S.D. Tex. 2017) (finding that plaintiff's sex discrimination claim failed where she offered no evidence she was replaced by someone outside of her protected class or similarly situated male employees were treated more favorably), *R. & R. adopted*, 2017 WL 4082314 (S.D. Tex. Sept. 13, 2017).

Because Quevedo does not establish a prima facie case of gender discrimination, her gender discrimination claim fails as a matter of law. *Alkhawaldeh*, 851 F.3d at 427.

**D. Retaliation**

Quevedo also alleges that Lantower retaliated against her by terminating her employment after she made a complaint of discrimination. To establish her retaliation claim, Quevedo must show that (1) she participated in an activity protected by Title VII, (2) Lantower took an adverse employment action against her, and (3) a causal connection exists between the protected activity and the adverse employment action. *Wallace*, 57 F.4th at 224. If Quevedo establishes a prima facie retaliation claim, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. *Id.* If the employer provides one such reason, the burden shifts back to the employee to show that the employer's reason actually is a pretext for retaliation. *Id.*

1. **Defendant's Proffered Reasons for Termination**

Assuming without deciding that Quevedo has established a prima facie case of retaliation, the burden shifts to Lantower to proffer a legitimate, non-retaliatory reason for Quevedo's termination. *Id.* "This burden is one of production, not persuasion; it can involve no credibility assessment." *Reeves*, 530 U.S. at 142. Lantower "may meet this burden by setting forth, through admissible evidence, 'reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful [retaliation] was not the cause of the employment action.'" *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)). Even an incorrect belief that an employee's job performance is inadequate constitutes a legitimate, nondiscriminatory reason. *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991).

Lantower offers evidence of legitimate, non-retaliatory reasons for Quevedo's termination: poor job performance and unprofessional behavior toward her coworkers and supervisors. Dkt. 26-1 at 5-6; Dkt. 26-2 at 2-5. Poor work performance and unprofessional behavior are legitimate, nondiscriminatory reasons for termination. *See Musser*, 944 F.3d at 561 (poor job performance is a legitimate, non-retaliatory reason for termination); *LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) (insubordination and poor job performance are legitimate, non-retaliatory reasons for termination); *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 416 (5th Cir. 2007) (insubordination is a legitimate, nondiscriminatory reason for termination). Because Lantower has met its burden of production on the second step of the *McDonnell Douglas* framework, the burden shifts back to Quevedo to show pretext.

2. **Pretext**

Pretext may be established through evidence of disparate treatment or by showing the employer's explanation to be false or "unworthy of credence," that it is "not the real reason for the

13

adverse employment action." *Watkins*, 997 F.3d at 283; *Laxton v. Gap Inc.*, 333 F.3d 572, 578-79 (5th Cir. 2003). If the employer offers more than one reason, the plaintiff "must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001). The plaintiff must produce "substantial evidence" of pretext. *Watkins*, 997 F.3d at 283. "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* (citation omitted). In deciding whether summary judgment is warranted, a court should consider the probative value of the proof that the employer's explanation is false and any evidence that supports the employer's case. *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021).

Quevedo argues only that Lantower's explanations were false; she does not attempt to prove disparate treatment to show pretext. Dkt. 28 at 9. Quevedo contends that she "has provided sufficient evidence to find that the employer's asserted justification [for her termination] is false." *Id.* But she offers only her own subjective testimony that Lantower's allegations are "lies" to support her allegations that she did not perform substandard work or display unprofessional behavior or insubordination. Dkt. 28-1 at 85:9-12, 86:8-24. Quevedo testified that Lantower's reasons for termination were "not true" because "shortly before" her PIP, "they gave me a one-dollar raise because I was doing a good job." *Id.* at 85:13-15. That Quevedo received a raise before her negative PIP does not mean that Lantower's reasons for her termination were false. "[P]rior good evaluations alone cannot establish that later unsatisfactory evaluations are pretextual." *Salazar v. Lubbock Cnty. Hosp. Dist.,* 982 F.3d 386, 390 (5th Cir. 2020) (holding that plaintiff failed to show pretext where she received a raise in 2016 based on job performance in 2015 where defendant alleged that plaintiff's performance began to decline in 2016) (citation omitted).

"[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones*, 8 F.4th at 368. Summary judgment proof

> must consist of more than a mere refutation of the employer's legitimate nondiscriminatory reason. Merely disputing the employer's assessment of the plaintiff's work performance will not necessarily support an inference of pretext. Here, as we have said before, we are not prepared to hold that a subjective belief of discrimination, however genuine, can be the basis of judicial relief, when the evidence in the record supports the employer's proffered justification and not the employee's claims of pretext.

*Id.* at 369 (cleaned up). In *Jones*, the employee argued that the defendant's proffered reasons for his termination were false and relied on his own declaration denying those allegations as evidence. The Fifth Circuit held that plaintiff's own declaration disputing his employer's allegations was insufficient summary judgment evidence to show pretext. *Id.*

Because Quevedo relies only on her own subjective testimony to show pretext, she does not produce "substantial evidence" to create doubt as to whether Lantower's proffered reasons were a pretext for gender discrimination. *See Salazar*, 982 F.3d at 391 (holding that plaintiff failed to show pretext where she excused employer of lying but did not provide any evidence to support her allegation); *Little*, 924 F.2d at 97 ("In sum, a dispute in the evidence concerning [employee's] job performance does not provide a sufficient basis for a reasonable factfinder to infer that [employer's] proffered justification is unworthy of credence."); *James v. Harlandale Indep. Sch. Dist.*, No. SA-21-CV-110-XR, 2022 WL 17586022, at *6 (W.D. Tex. Dec. 9, 2022) (finding that plaintiff's retaliation claim failed where plaintiff offered no evidence outside of "mere conclusory allegations" to overcome defendant's legitimate, nondiscriminatory reasons for adverse employment actions).

## V.     Recommendation

The Court **RECOMMENDS** that the District Court **GRANT IN PART and DENY IN PART** Defendant's Motion for Summary Judgment (Dkt. 26). This Magistrate Judge **RECOMMENDS** that the District Court **GRANT** the motion as to Plaintiff's (1) gender discrimination claim under Title VII, (2) race and national origin discrimination claims under Title VII and 42 U.S.C. § 1981, and (3) retaliation claims under Title VII and 42 U.S.C. § 1981; and **DENY** the Motion as to Plaintiff's Title VII hostile work environment claim, which would be the sole remaining claim.

It is **ORDERED** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Robert Pitman.

## VI.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on April 18, 2023.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE